IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| A&L PRECISION PRODUCTS | ) | |
| Plaintiff, | ) | Civil Action No. 07-0345 |
| | ) | Judge David S. Cercone |
| vs. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| ALLOY BELLOWS & PRECISION | ) | |
| WELDING, INC. | ) | |
| Defendant and Counterclaim Plaintiff | ) | |

**REPORT AND RECOMMENDATION**

**I.  Recommendation**

It is respectfully recommended that the Motion for Partial Summary Judgment filed by

Plaintiff A&L Precision Products (hereafter "A&L")[1] as to certain counterclaims filed by

Defendant Alloy Bellows & Precision Welding, Inc. (hereafter "Alloy Bellows"),[2] and the

Motion for Partial Summary Judgment filed by Alloy Bellows as to certain counterclaims, each

be denied as more fully set forth below.

---

[1] A&L is a Pennsylvania sole proprietorship located in Murrysville, Pennsylvania and owned by Arnold Fonseca.  It manufactures and services castings and machine products for use by aerospace, medical, petrochemical, power generation and other industries.  See Complaint at ¶¶ 2-6; First Amended Answer and Counterclaim at ¶ 3.

[2] Alloy Bellows is an Ohio corporation with a principal place of business in Cleveland, Ohio.  It manufactures products including "hydroformed" metal bellows.

## II.  Report Overview

This case involves claims regarding A&L's allegedly fraudulent contracting, manufacture and sale to Alloy Bellows of defective equipment known as a "hydroformer",  and a multitude of material fact questions regarding, *e.g.*, representations made; contractual relationship; design, construction and servicing - by an individual then employed by Alloy Bellows - of hydroformers sold first to a competitor and then to Alloy Bellows; the hydroformer's defective performance; terms and/or time periods of express and implied warranties; and communications and other circumstances concerning repeated attempts to repair by A&L and continued use of the machine by Alloy Bellows.

On March 16, 2007 A&L filed a preemptive Complaint seeking (a) a declaratory judgment that it was in full compliance with its contract and warranty, and (b) recovery, on a claim for unjust enrichment, for compensation for service calls on the hydroformer made after the warranty period.  Alloy Bellows filed counterclaims including breach of contract and express warranty; breach of implied warranties of merchantability and fitness; revocation of acceptance; fraudulent misrepresentation/omission and concealment; breach of the duty of good faith; punative damages; and misappropriation of intellectual property.  Of these, A&L's Motion for Partial Summary Judgment encompasses all claims but those for breach of contract, express warranty, and implied warranties of merchantability and fitness.

For reasons set forth below, this Report recommends that A&L's Motion for Partial Summary Judgment be (1) denied as to claims for revocation of acceptance under the Uniform Commercial Code (the "UCC"), as (a) there are material fact questions as to A&L's representations and repeated attempts to repair the hydroformer, and (b) revocation would

remain an available remedy under the fraudulent inducement claim, which will proceed; (2) denied as to claims for fraudulent inducement, as (a) there are material fact questions as to misrepresentation/omission and concealment tolling the statute of limitations, and (b) the Court need not decide at this time whether those representations regarding contract performance are, under Pennsylvania law, subsumed into Alloy Bellow's contract claim, which will proceed, and barred in tort by the gist of the action doctrine; (3) denied as to claims for breach of a duty of good faith and fair dealing, as (a) there are material fact questions and (b) the Court need not decide at this time whether such claim should proceed independently under Pennsylvania law or whether the duty of good faith serves to inform the breach of contract claim; (4) denied as to claims for punitive damages, as there are material fact questions regarding A&L's alleged bribery of Alloy Bellow's employee and other outrageous commercial misconduct; and (5) denied as to claims for misappropriation of intellectual property as there are material fact questions regarding A&L's alleged (a) procurement of a breach of the duty of loyalty owed to Alloy Bellows by its employees, and (b) profit from the misappropriation of, *e.g.,* proprietary/confidential information and/or expertise gained in the course and scope of employment with Alloy Bellows.  It further recommends that Alloy Bellow's Motion for Partial Summary Judgment be denied because A&L has effectively denied facts material to each of its counterclaims, creating triable questions.[3]

---

[3] See generally Plaintiff's Response to Defendant's Motion for Partial Summary Judgment.

III. **Statement of Facts**

The alleged material facts of this case, many of which are in dispute,[4] are generally as follows:

In October, 2004, Alloy Bellows entered into a Purchase Order with A&L to design and manufacture a hydroformer for Alloy Bellows' business use and to its specifications at a cost of over $300,000.00.  See Complaint at ¶¶ 9, 19.  A&L was to custom design a "durable, high production, long lasting" bellows hydroforming machine and allegedly represented that an experienced A&L employee named Paul Terlinski would design, install and service the hydroformer.  See Amended Answer and Counterclaim at ¶ 5, Counterclaim at ¶ 5, 13.  The hydroformer was to meet Alloy Bellows' expressed needs and specifications, including easy and reliable production of a *variety* of bellows.  See id. at ¶ 8.[5]

At that time, Alloy Bellows employed Michael A. Bradley (hereafter "Bradley") as its full-time production manager. See id. at ¶ 34.  Bradley was responsible for formulating Alloy Bellows business needs, and for bidding and purchasing the new equipment.  He had been specifically advised by Alloy Bellows that it did not believe it had the in-house expertise to design and build the hydroformer.  See id. at ¶¶ 34-35.[6]  Unbeknownst to Alloy Bellows, Bradley

---

[4] See generally Plaintiff's sixty-three page response to Defendant's Statement of Facts (outlining disputed facts).

[5] See also Defendant's Opposition to Motion for Partial Summary Judgment at 14 (explaining that the hydroformer was specifically bid to "be able to accommodate a wide variety of tooling . . ., [which could] be easily changed" to make different kinds of bellows because the machine "would be us[ed] to make comparatively small runs of many different kinds of parts").

[6] See also Defendant's Motion for Partial Summary Judgment at 3 ("Mr. Bradley is not a professional engineer, and has only a high school education.").

was secretly performing work for A&L that utilized proprietary and/or other information/expertise gained in the course/scope of his employment with Alloy Bellows, even performing such work on Alloy Bellows' time (as when he was absent from the office under pretext).  See id. at ¶ 37.

Alloy Bellows alleges that, in a fraudulent conspiracy with A&L, Bradley did not properly bid Alloy Bellows' hydroformer work to competing manufacturers, but instead misdirected the work to A&L[7] in exchange for an arrangement under which A&L would take Alloy Bellows' money for the hydroformer, and pay Bradley himself to also (a) adapt an earlier design which he prepared for A&L's sale of a hydroformer to an Alloy Bellows' competitor,[8] and (b) construct from that design the hydroformer which A&L delivered to Alloy Bellows.  See id. at ¶¶ 37-41.[9]

On or about May 6, 2005, Bradley was terminated by Alloy Bellows for reasons unrelated to the events *sub judice*.[10]  On May 11, 2005, Alloy Bellows received e-mail

---

[7] See Defendant's Opposition to Motion for Partial Summary Judgment at 8 (asserting that Bradley "undertook affirmative steps to steer the bid" to A&L, and that Bradley was "in charge of evaluating competing proposals and technical issues and making a purchase recommendation to Alloy Bellows' senior management").

[8] Alloy Bellows alleges that Bradley's design, construction and service work on the hydroformer previously sold by A&L to an Alloy Bellows' competitor, Flexible Metal, Inc., was also fraudulently performed during Bradley's employment with Alloy Bellows, and perhaps even on Alloy Bellows' time, in conspiracy with A&L.  See Amended Answer and Counterclaim at ¶¶ 36, 56.

[9] See also Defendant's Opposition to Motion for Partial Summary Judgment at p. 3 (asserting that A&L paid Bradley $110,000 for his work); id. at 6 (noting that the initial $20,000 payment was noted on its face as a "commission").

[10] See id. at ¶ 48.

correspondence from its competitor, Flexible Metals, Inc., asserting that the hydroformer previously designed and manufactured by Bradley – using the alias Mike Allen - for A&L, which then sold it to Flexible Metals, and repeatedly sent Bradley to service it, was defective. Alloy Bellows inquired of these allegations with both A&L and Bradley in late June 2005.  As discussed more fully, *supra* at Section V(B)(3), at that time and continuing thereafter, A&L and Bradley either expressly or implicitly represented that they were untrue.

On June 28, 2005, a contractually-required performance demonstration of the hydroformer was given by A&L at its place of manufacture in New Kensington, Pennsylvania, and Alloy Bellows made the second of three required partial payments.  See Complaint at ¶¶ 11-13.  Alloy Bellows now alleges that this demonstration was deliberately misleading and/or fraudulent and that A&L was aware of defects in the hydroformer at that time.[11]  In August, 2005, the hydroformer was disassembled and transported to Alloy Bellows place of operation in Ohio.  It was reassembled/installed by Bradley, who was now working for A&L, another performance demonstration was given, and shortly thereafter Alloy Bellows made its third and final payment.  See Complaint at ¶ 14.[12]

---

[11] See Amended Answer and Counterclaim at ¶¶ 43-45 (stating that A&L and Bradley concealed known defects from Alloy Bellows by staging "a misleading 'runoff' demonstration using only one part and a short production run (which would not reveal the machine's tendency to go out of tolerance)").

[12] See also Answer and Counterclaim at ¶ 49 ("Instead of Paul Terlinski to install and service this custom-designed machine . . ., A&L assigned Mr. Bradley to do so . . . ."); Defendant's Motion for Partial Summary Judgment at 6-7 (stating that Alloy Bellows consented, in late June 2005, to Bradley's assisting in assembly of the hydroformer when A&L represented that Terlinski was unavailable); id. at 17 ("The person dispatched by [A&L] to attempt the warranty repairs" was Bradley.)

The hydroformer was placed into service by Alloy Bellows and problems with the machine were immediately apparent, as it repeatedly failed with either (a) retooling for use to manufacture another product or (b) any extended production use.  See Amended Answer and Counterclaim at ¶ 42.  The machine was then repeatedly serviced by A&L/Bradley under the one-year express warranty period, which began at the time of Alloy Bellows' acceptance of the hydroformer.[13]  A&L's service of the machine continued into the Fall of 2006.  See Defendant's Opposition to Motion for Partial Summary Judgment at 22.  Alloy Bellows asserts that these attempts at repair were "limited and ineffectual" and "did not address the underlying design and workmanship defects."  See Amended Answer and Counterclaim at ¶ 3.  It also asserts that during this time A&L gave continued assurances that the machine could be repaired.  See Defendant's Opposition to Motion for Partial Summary Judgment at 3, 21-22.  Thereafter, the hydroformer was serviced by Alloy Bellows employees in attempts to meet its customer order/production requirements.  A&L asserts that the hydroformer was improperly maintained and substantially altered.  See Plaintiff's Reply to Defendant's Opposition at 14.

By correspondence of November 8, 2006, Alloy Bellows alleged A&L's violations of warranties owing to expert-identified flaws in the hydroformer impacting its "durability and reliability", indicated that it would have to be replaced, and asserted claims for consequential and replacement cost damages.  See Complaint at 3, Defendant's Opposition to Motion for Partial Summary Judgment at 22.  By correspondence of December 13, 2006, A&L denied

---

[13] A&L represents the acceptance of the hydroformer occurred, by the parties' contract terms, at the first of the two performance demonstrations, *i.e.*, on June 28, 2005.  See Complaint at ¶¶ 11, 17.  Alloy Bellows asserts that A&L extended express and implied warranties made in connection with the sale of the hydroformer by correspondence of May 20, 2005.  See Amended Answer and Counterclaim at ¶ 6.

further liability, including under the UCC.  See Defendant's Opposition to Motion for Partial

Summary Judgment at 22.  Alloy Bellows asserts that it then "ran down" production on the

hydroformer as necessary to protect its customers until a replacement arrived, at which time it

was taken completely off line/uninstalled.  Id. at 22-23.[14]   A&L filed its preemptive complaint

on March 16, 2007.


**IV.  Summary Judgment Standard**

Summary judgment is to be granted only when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a

matter of law."  Fed. R. Civ. P. 56(c).  A fact is "material" if proof of its existence or non-

existence might affect the outcome of the suit under applicable law.  See Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986).  And a dispute is "genuine" if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party.  Id.

All doubts as to the existence of a genuine issue of material fact are resolved against the

moving party, and the entire record is examined in the light most favorable to the nonmoving

party.  Continental Ins. Co. v. Bodie, 682 F.2d 436, 438 (3d Cir. 1982).  However, the

nonmoving party "must present affirmative evidence in order to defeat a properly supported

motion for summary judgment."  Anderson, 477 U.S. at 257.  It cannot rely on unsupported

_____

[14] A&L contests that continued production use of the hydroformer was unnecessary and
that Alloy Bellows failed to allow A&L opportunity to arrange for its proper removal and
storage.  See Plaintiff's Reply to Defendant's Opposition at 14.  Here, as elsewhere, material fact
questions exist.

assertions, conclusory allegations or mere suspicions. <u>Williams v. Borough of West Chester</u>, 891 F.2d 458, 460 (3d Cir. 1989).  The nonmoving party may be subject to summary judgment under Rule 56 if, after adequate time for discovery, it "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).[15]

## V.  <u>Analysis</u>

### A.  Revocation of Acceptance Under the UCC

Under Pennsylvania's codification of the relevant provisions of the Uniform Commercial Code, 13 Pa.C.S.A. § 2608, a buyer may revoke his acceptance of a substantially non-conforming commercial unit "within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects."  A&L fairly observes that, under the applicable provisions of the UCC, the general rule is that the buyer cannot continue in extended use of the unit/goods and indefinitely toll its right to revoke.  Alloy Bellows raises, however, substantial material fact questions regarding, *e.g.*, the machine's productivity/production time; A&L's continued promises and assurances that the hydroformer required a "break-in" period and could be satisfactorily repaired; A&L's repeated attempts to repair; their effect on the reasonableness of Alloy Bellows' continued use; and the timing and scope of its notifications to A&L.  <u>See generally</u> Defendant's Opposition to Motion for Partial Summary Judgment at 21-22.  <u>Compare,</u>

---

[15] <u>See</u> <u>also</u> <u>Anderson</u>, 477 U.S. at 251-252 (indicating that, distilled to its essence, the summary judgment standard requires the nonmoving party to create a "sufficient disagreement to require submission [of the evidence] to a jury").

*e.g.*, Plaintiff's Brief in Support of Motion for Partial Summary Judgment at 24, 29 (assertions regarding notice of revocation/tender back) <u>with</u> Defendant's Response to Plaintiff's Fact Statement (same).

It appears to this Court that the evaluation of the reasonableness of Alloy Bellows' conduct regarding the hydroformer, under these circumstances and in the context of a UCC claim, clearly remains for the jury.  <u>See, *e.g.*</u> <u>Moscatiello v. Pittsburgh Contractos Equip. Co.</u>, 595 A.2d 1198, 1205 (Pa. Super. 1991) (concluding that buyer effectively revoked within reasonable time where seller had early observation-based knowledge of problems and repeatedly traveled to site to attempt repair, thus encouraging buyer to continue use).  <u>See generally</u> <u>Smith v. Penbridge Assocs., Inc.</u>, 655 A.2d 1015, 1018, 1021 (Pa. Super. 1995) (noting that "[u]nder Pennsylvania law, what is a reasonable time . . . for revocation . . . is generally deemed a question of fact to be resolved by the fact finder . . . ."); <u>cf.</u> <u>Global Ground Support, LLC v. Glazner Enterprises, Inc.</u>, 2008 WL 4425241 (E.D. Pa. Sept. 29, 2008) (applying comparable North Carolina codification and noting that (1) issue of whether communication constituted reasonable notice was for jury, (2) attempts at repairs generally extend reasonable time for revocation, and (3) subsequent modifications do not preclude UCC revocation of defective goods).

In addition, the Court observes that the right of revocation available under this claim is duplicative of Alloy Bellows' right of revocation/recission under its claims for fraud in the inducement, which will proceed.[16]  As (1) there are material fact questions and (2) revocation

---

[16] <u>See</u> Defendant's Opposition to Motion for Partial Summary Judgment at 9-10, n. 4 (providing case citations regarding right of recission for fraud in the inducement with, *e.g.*, concealment of employee or insider's undisclosed dual loyalty or conflicting interests).

would remain available to Alloy Bellows in any event, the Court will deny summary judgment on this counterclaim.

### B. Fraudulent Misrepresentation/Omission in Inducement and Concealment

Alloy Bellows brought this counter-claim as to information withheld from/misrepresented to it, and upon which it allegedly relied in entering into its contractual relationship regarding the hydroformer.[17]  The nature of these claims is, essentially, two-fold. First, Alloy Bellows alleges that A&L was aware that the hydroformer was defective and proceeded with the sale nonetheless, *i.e.*, that it "passed off" a defective product.  See Defendant's Opposition to Motion for Partial Summary Judgment at 4.[18]  Second, Alloy Bellows alleges that A&L (a) bribed its employee, Bradley, to award the hydroformer contract to A&L and then (b) diverted/misappropriated that Alloy Bellows' employee's time/attention/information for work on the hydroformer sold to Alloy Bellows.

1. Passing Off a Defective Hydroformer

As to the first basis, it appears to this Court at this time that Alloy Bellows states a claim that is perhaps somewhat tenuous under the applicable standard, but nonetheless

---

[17] See generally Bortz v. Noon, 729 A.2d 555, 560 (1999) (setting forth requirements for claim of fraudulent inducement as to: (1) a representation; (2) material to the transaction; (3) made falsely, with knowledge of its falsity or recklessness as to its truth or falsity; (4) with intent to mislead into reliance; (5) justifiable reliance; and (6) proximately-caused injury).

[18] Cf. GNC Franchising, Inc. v. O'Brien, 443 F. Supp.2d 737, 739 (W.D. Pa. 2008) (observing that a duty to disclose arises when a party knows that the other is about to enter into an agreement under a mistake of fact, [and] that the facts allegedly concealed were peculiarly and exclusively within the first party's knowledge such that the second party could not reasonably have been expected to discover them, or that the second party would reasonably expect disclosure of the allegedly concealed facts).

plausible/colorable.[19]  Alloy Bellows rests its allegation that A&L was aware the hydroformer was defective most effectively on evidence that (a) the hydroformer designed/manufactured by Bradley for Flexible Metals, from which the Alloy Bellows' hydroformer was derived, was shown to be repeatedly unable to work with different tool sets/do "prototyping" runs and (b) A&L budgeted $50,000 for repair time.  See Defendant's Opposition to Motion for Partial Summary Judgment at 14-15.[20]

In addition, it appears to this Court quite possible that a claim for fraudulent inducement that is premised on A&L's knowledge that the hydroformer *would not meet the contractual performance standards* would be subsumed into Alloy Bellow's breach of contract and related warranty claims.  See Guy Chemical Co., Inc. v. Romaco N.V., 2007 WL 184782, **5-6 (W.D. Pa. Jan. 22, 2007) (concluding that Pennsylvania's gist of the action doctrine may in certain circumstances bar fraudulent inducement claims and that proposed tort claim was "inextricably intertwined" with contract performance where performance specifications of pre-contractual negotiations were later included in contract).  A summary of the applicable doctrine follows:

"Generally, the gist-of-the-action doctrine precludes a party from raising tort claims where the essence of the claim actually lies in a contract that governs the parties' relationship." Sullivan v. Chartwell Investment Partners, LP, 873 A.2d 710, 718 (Pa. Super. 2005).  "[T]he important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of

---

[19] See Plaintiff's Reply to Defendant's Opposition at 4 (noting that fraud must be shown by clear and convincing evidence) (citing Goldstein v. Phillip Morris Inc., 854 A.2d 585, 590-91 (Pa. Super. 2004)).

[20] Cf. id. at 15 (noting that some Alloy Bellows' personnel concluded "that A&L had to have known [the hydroformer] had significant problems when shipped because the problems were so bad, the machine was so late, and the problems started immediately").

duties imposed by mutual consensus." Redevelopment Authority of Cambria County v. International Insurance Co., 454 Pa. Super. 374, 685 A.2d 581, 590 (1996) (en banc), quoted in Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc., 247 F.3d 79, 103 (3d Cir. 2001). Accordingly, a claim is limited to contract law when "the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied in the law of torts." Bash v. Bell Telephone Co., 601 A.2d 825, 830 (1992).[21]

The Pennsylvania Superior Court has frequently applied the gist of the action doctrine to claims for fraud in performance of a contract, but not to claims for *fraud in the inducement*. See Sullivan, 873 A.2d at 719 ("Following a thorough analysis of the issue, the eToll Court concluded that the gist-of-the-action doctrine would apply to bar a claim for fraud in the performance of a contract. However, it also observed that the gist-of-the-action doctrine would not necessarily bar a fraud claim stemming from the fraudulent inducement to enter into a contract.") (citing eToll, Inc. v. Elias/Savion Advertising, Inc., 811 A.2d 10 (Pa. Super. 2002)).[22] See also Air Products and Chemicals, Inc. v. Eaton Metal Products Co., 256 F. Supp.2d 329, 341 (E.D. Pa. 2003), quoted in Sullivan, 873 A.2d at 719 (noting that "fraud in the inducement claims are much more likely to present cases in which a social policy against the fraud, external

---

[21] See also Koresko v. Bleiweis, 2004 WL 3048760, *3 (E.D. Pa. Dec. 30, 2004) (observing that the existence of a contractual relationship is not dispositive in determining whether a tort claim may lie; rather, the essential question is the violation of an additional duty distinct from the contractual obligations) (citing Bohler-Uddeholm).

[22] The eToll Court summarized the "persuasive authority interpreting Pennsylvania law" on the gist of the action doctrine as barring tort claims: (1) "arising solely from a contract between the parties", (2) where "the duties allegedly breach were created and grounded in the contract itself", (3) where "the liability stems from a contract", or (4) where the tort claim "essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract."  810 A.2d at 19.

to the contractual obligations of the parties, exists").[23]   This distinction becomes somewhat

problematic, however, where the alleged misrepresentations that induce a contract also constitute

promises that form the contract's terms.

In Williams v. Hilton Group PLC, 93 Fed. Appx. 384 (3d Cir. 2004) (*per curiam*), the

Third Circuit affirmed dismissal under the gist of the action doctrine of fraud claims involving

breach of an exclusive negotiation agreement despite evidence that the defendant never intended

to honor its promise of exclusivity.  However, the Williams Court did not have the benefit of the

Superior Court's subsequent decision in Sullivan, which permitted a claim for fraud in the

inducement predicated upon the same promises that it found to be sufficient to make out a

contract claim.  As the Sullivan Court explained,

> Appellant alleged that Appellee fraudulently and/or negligently agreed to perform
> obligations that it never intended to perform in order to induce Appellant to agree
> to the proposed changes . . . . .  Accordingly, we conclude that since Appellant's
> tort claims relate to the inducement to contract, they are collateral to the
> performance of the contracts and therefore, are not barred by the gist-of-the action
> doctrine.

Sullivan, 873 A.2d at 719.  This conclusion undercuts the majority holding in Williams, and

supports the dissent's view that under the Pennsylvania cases, where there is "fraudulent intent,

i.e. a subjective and undisclosed intent not to perform, a fraud claim is stated."  Williams, 93

Fed. Appx. at 390 (Becker, J., dissenting).[24]   See also  Williams, 93 Fed. Appx. at 386, 387

---

[23]   The Court in Air Products further explained that "fraud to induce a person to enter a
contract is generally collateral to (i.e., not 'interwoven' with) the terms of the contract itself".
256 F. Supp.2d at 341.

[24]   The Pennsylvania Superior Court's holding in Sullivan, as the most recent ruling of
the intermediate appellate court, "must be accorded significant weight and should not be
disregarded absent persuasive indication that the highest court would rule otherwise."  U.S.
Underwriters Ins. Co. v. Liberty Mut. Ins. Co., 80 F.3d 90, 93 (3d Cir. 1996).

(recognizing that the gist of the action doctrine "appears to call for a fact-intensive judgment as to the true nature of a claim", and accordingly explicitly limiting its *per curiam* opinion to "the particular facts presented").[25]

With these considerations duly noted, and because other related claims may proceed, this Court will deny A&L's request for summary judgment on this portion of Alloy Bellows' fraudulent claim, declining to determine in advance of necessity the complex and novel question of whether the Pennsylvania Supreme Court would, under the circumstances alleged, bar Defendants' fraudulent inducement claim premised on A&L's alleged "passing off" of a defective product under the gist of the action doctrine.[26]

2. Fraudulent Misrepresentations/Omissions Regarding Conspiracy with Alloy Bellow's Employee

As to its second basis, Alloy Bellows is entitled to proceed, as a reasonable jury could find that A&L made actionable misrepresentations and/or omissions where it represented the design and manufacture would be performed by appropriately qualified/experienced A&L

---

[25] As noted above, Judge Becker's dissent in Williams distinguished, in light of Pennsylvania case law, those breach of contract cases in which the party had no present intention to perform the contract terms from those in which the party intended - but later failed - to perform. As discussed in this Court's Opinion in GNC Franchising, Inc. v. O'Brien, the law in this area has been in some disarray.

[26] See GNC Franchising, Inc. v. O'Brien, *supra* (concluding that Court should follow the more prudent course of withholding judgment on an unsettled question of law until the facts definitively found) (citing Petition of Bloomfield S.S. Co., 298 F.Supp. 1239, 1242 (D.C.N.Y. 1969)). See also id. (citing Cohesive Technologies v. Waters Corp., 130 F.Supp.2d 157, 160 (D.C. Mass. 2001)(explaining that denial of motion is appropriate where movant "fails to show that no responsive legal theory will be available to the opposing party, along with facts to support that theory, to defeat the asserted entitlement to summary judgment"); Wright & Miller, 10A Fed. Prac. & Proc. Civ. 3d § 2725, text at n. 13 (observing that the difficulty of the legal issues involved is relevant to a grant/denial of summary judgment and that complex questions of law frequently require concrete factual development).

employees and neglected to disclose that the contract had been improperly diverted to A&L as a result of A&L's bribery of[27] and conspiracy with a  possibly unqualified employee who would then perform the work himself.  Clearly this information would have factored into Alloy Bellows' assessment of Bradley's recommendation that the contract be awarded to A&L,[28] and clearly Alloy Bellows' has proffered sufficient evidence to reasonably support its claim that A&L omitted material facts which it had a duty to disclose (and/or affirmatively concealed them).

Moreover, this Court concludes that, given the facts discussed *supra*, these misrepresentations/omissions regarded matters beyond the performance of express contractual duties and constituted violations of duties imposed as a matter of social policy and embodied in the law of torts.  They are, therefore, actionable in tort and outside Pennsylvania's gist of the action bar.

3.  Statute of Limitations; Concealment

Finally, although A&L asserts a statute of limitations bar to this counterclaim, recovery by Alloy Bellows for fraudulent inducement is not clearly time barred.  A&L maintains that Alloy Bellows' receipt of  Flexible Metal's e-mail correspondence of May 11, 2005, asserting - without further substantiation - that Bradley designed/manufactured its hydroformer for A&L and that the machine was defective, placed it on inquiry notice and began running of the statutory two-year period for filing of the claim.  Receipt of the correspondence notwithstanding,

---

[27]  See *supra* n. 9.

[28]  Cf. Defendant's Opposition to Motion for Partial Summary Judgment at 5 (reiterating that Alloy Bellows had concluded that its in-house resources, including Bradley, lacked sufficient expertise to design the hydroformer).

material fact questions remaining regarding sufficient notice and, *e.g.*, the scope and time frame of the reasonable inquiry required of Alloy Bellows' on receipt of that letter.

More particularly, the two-year statutory period for commencing an action sounding in fraud ordinarily begins to run at the time the fraud is committed.  But Pennsylvania law recognizes an exception which delays the running of the statute until the party knew, or through the exercise of reasonable diligence should have known, of the injury and its cause.  See, *e.g.*, Beauty Time v. VU Skin Sys., 118 F.3d 140, 144 (3d Cir. 1997).  Alloy Bellows is, therefore, not clearly charged with knowledge sufficient to begin the statutory period on receipt of allegations from a competitor.[29]  Under the circumstances *sub judice*, it appears to this Court that it may have been reasonable for Alloy Bellows to inquire of A&L and Bradley, as it did, and to accept their allaying representations in response.  Whether or not that course of conduct was reasonable, and at what point Alloy Bellows should have reasonably been aware that it had suffered an injury for which it was entitled to redress, fall within the provenance of the jury. See Guy Chemical, 2007 WL 184782 at **4-5 (noting level of factual dispute in the litigation and observing that "the point at which the complaining party should reasonably be aware that he has suffered an injury is generally an issue of fact to be determined by the jury . . . [and o]nly where the facts are so clear that reasonable minds cannot differ may the commencement of the limitations period be determined as a matter of law") (quoting Melley v. Pioneer Bank, N.A., 834 A.2d 1191, 1201 (Pa. Super. 2003)).[30]

---

[29]  Cf. Brunea v. Gustin, 775 F.Supp. 844, 846 (W.D. Pa. 1991) (concluding that statutory period begins to run when the injured party "possess sufficient critical facts to put him on notice that a wrong has been committed and that he need investigate").

[30]  The Court concurs with A&L that these counterclaims do not "relate back" to the DEC action as claims that tend to negate the declaratory relief sought, but raise no possibility of

Moreover, even if Alloy Bellows reasonably should have undertaken investigation beyond inquiry of A&L and Bradley, their alleged misrepresentations to Alloy Bellows on its inquiry regarding Flexible Metal's correspondence quite possibly constituted a further fraud/fraudulent concealment that tolled the statute of limitations.  More particularly, as (a) it is proffered that in late June, 2005 A&L responded to Alloy Bellows' inquiries by stating that Bradley was not an A&L employee - an assertedly truthful statement, as Bradley was A&L's independent contractor, but one which at best failed to "set the record straight" and at worst purposefully further misled Alloy Bellows as to the implications/import and accuracy of Flexible Metal's May 11, 2005 correspondence;[31] and (b) the counterclaims were filed on May 31, 2007, there remain material fact questions regarding the statute of limitations.  See 42 Pa.C.S.A. § 5532; York Excavating, Inc. v. Employers Ins. Of Wausau, 834 F.Supp. 733 (M.D. Pa. 1993) (observing that concealment tolls statute of limitations).

---

affirmative relief (i.e., as "recoupment" claims).  See Plaintiff's Reply to Defendant's Opposition at 6 (citing Cohen v. Wolgin, 1995 WL 33095, *7 (E.D. Pa. January 24, 1995)).

[31] See Amended Answer and Counterclaim at ¶ 39 (including, among allegations of affirmative concealment, A&L's "lying to Alloy Bellows about Mr. Bradley having never worked previously in any capacity for A&L, beginning in June 2005 and continuing on sequent occasions"); Defendant's Opposition to Motion for Partial Summary Judgment at 6-7; 12 (contrasting Alloy Bellows' assertions that A&L/Fonesca expressly and repeatedly denied Bradley's involvement in any work on the Alloy Bellows' hydroformer, thus"inducing Alloy Bellows to continue to deal with A&L", with Mr. Fonesca's position that he "chose his words with hyper-particularity"); id. at 12 (alleging that Bradley "continued his [related] fraudulent misrepresentations until well into 2007, going so far as to do so in writing in connection with obtaining a payment due under his deferred compensation arrangement"); id. at 17 (alleging that A&L "help[ed] Mr. Bradley wordsmith [these] denials").

**C.  Breach of the Covenant of Good Faith and Fair Dealing**

Because Alloy Bellows' breach of contract claim is not challenged on A&L's Motion for

Summary Judgment, and will proceed to the jury in any event, with trial of the same underlying

fact questions, this Court will not determine in advance of necessity the novel question of

whether Pennsylvania law would, in these circumstances, recognize an independent cause of

action for breach of the covenant of good faith and fair dealing.

In general,

> [t]he Restatement (Second) of Contracts, § 205, expressly provides that "every
> contract imposes upon each party a duty of good faith and fair dealing in its
> performance and in its enforcement."   And the Pennsylvania Courts have
> repeatedly embraced this fundamental principle of the Restatement.  See, e.g.,
> Frickert v. Deiter Bros. Fuel Co., 347 A.2d 701, 705 (Pomeroy, J. concurring);
> Atlantic Richfield Co. v. Razumic, 390 A.2d 736, 740-41 (Pa. 1978); Bethlehem
> Steel Corp. v. Litton Indus. Inc., 488 A.2d 481, 600 (Pa. 1985) (Zappala, J.,
> Opinion in Support of Reversal) ("We have previously accepted as the law of this
> Commonwealth the principle stated in [§ 205] . . . .") (citing Razumic);
> Germantown Mfg. Co. v. Rawlinson, 491 A.2d 138, 148 (Pa. Super. 1985);
> Somers v. Somers, 613 A.2d 1211, 1213 (Pa. Super. 1992) (citing Frickert);
> Stamerro v. Stamerro, 899 A.2d 1251 (Pa. Super. 2005) ("Additionally, this
> 'Commonwealth has accepted the principle in [§ 205] that 'every contract
> imposes upon each party a duty of good faith and fair dealing . . . .'") (quoting
> John B. Comonos, Inc. v. Sun Co., Inc., 831 A.2d 696, 705-6 (Pa. Super. 2003)).

GNC Franchising, Inc. v. O'Brien, 443 F. Supp.2d 737, 750 (W.D. Pa. 2006).[32]

Notwithstanding the breadth of the Restatement's formulation, cases regarding

Pennsylvania law have recognized three potential limitations on the scope of the duty of

---

[32] See also, e.g., Donahue v. Federal Express Corp., 753 A.2d 238, 241 (Pa. Super. 2000)
("Every contract in Pennsylvania imposes on each party a duty of good faith and fair dealing in
its performance and enforcement."); Liazis v. Kostas, Inc., 618 A.2d 450, 453 (Pa. Super. 1992)
(same); Romeo v. Pittsburgh Assocs., 787 A.2d 1027 (Pa. Super. 2001) (same).  Cf. Bedrock
Stone & Stuff, Inc. v. Mfrs. & Traders Trust Co., 2005 U.S. Dist. LEXIS 10218 (E.D. Pa. May
24, 2005) (noting that "the Supreme Court of Pennsylvania has specifically adopted a
Restatement rule that the duty of good faith and fair dealing is inherent in every contract").

good faith and fair dealing.  First, it has been suggested that the duty may only apply in certain contexts.  See, e.g., Creeger Brick and Building Supply, Inc. v. Mid-State Bank and Trust Co., 560 A.2d 151, 153 (Pa. Super. 1989) ("In this Commonwealth the duty of good faith has been recognized in limited situations.").  It is, however, far from clear that any Pennsylvania cases declining to impose the particular obligations urged under the rubric of good fair and fair dealing truly stand for the proposition that in the class of contractual relationships at issue the parties could dispense with fairness and good faith altogether.  It is even less likely that Pennsylvania Courts would hold that the duty only applies to a few "limited situations", and that parties in the great run of contracts remain free to perform them unfairly and in bad faith.

The second limitation discussed by the caselaw is that even if a duty is present, it might not give rise to an independent cause of action.  See, e.g., Northview Motors, Inc. v. Chrysler Motors Corporation, 227 F.3d 78, 91 (3d Cir. 2000) (observing that "[i]n practice, however, the courts have recognized an independent cause of action for breach of a duty of good faith and fair dealing only in very limited circumstances").  This limitation might be seen as simply a more nuanced , refined and ultimately accurate version of the limitation discussed in cases like Creeger.  This refinement resolves the apparent contradiction between the limitation and the broadly stated rule:  It is quite possible to uphold a duty of good faith in "every contract", while at the same time limiting extra-contractual enforcement of that duty to particular circumstances.[33]

---

[33]  Cf. Seth William Goren, Looking for Law in All the Wrong Places: Problems in Applying the Implied Covenant of Good Faith Performance, 37 Univ. San Fran. L. Rev. 257, 259-60 (2003) (observing that "two problems . . . have arisen nationally in confronting the covenant: whether the covenant is implicated in every contractual relationship . . ., and whether a

The third limitation suggested by the cases is that the implied duty of good faith may not override express contractual provisions.  See Witmer v. Exxon Corp., 434 A.2d 1222 (Pa. 1981) (finding no sustainable bad faith claim where franchisor acted within express terms of written agreement).   This potential limitation is inapplicable to the extent the parties' written agreements do not contain express terms governing the bases for Alloy Bellows' claim.[34]

With these observations, the Court concludes that the parties' agreements should be read to include an implied covenant of good faith and fair dealing in the parties' performance of their contractual duties.[35]  And, as Alloy Bellows' breach of contract claim is not challenged on A&L's Partial Motion for Summary Judgment, the Court need not determine at this time whether, under the circumstances of this case, said covenant should be viewed as an independently enforceable duty or merely as the source of an

---

breach of the covenant of good faith gives rise to an independent cause of action or is merely a tool of contractual interpretation"); id. at 285 (providing a cogent analysis of "conflicting" Pennsylvania and interpretive federal decisions in this area).

[34]  See, e.g., Defendant's Opposition to Motion for Partial Summary Judgment at 9 (discussing "bid-rigging" as actionable breach of the contractual covenant of good faith and fair dealing).

[35]  Cf.  Livingstone v. North Belle Vernon Borough, 91 F.3d 515, 525-26 (3d Cir. 1996) (implying duty of good faith as necessarily "follow[ing] from the duty of good faith and fair dealing, Restatement (Second) of Contracts § 205"); id. at 526 n. 11 (noting that "[t]he duty of good faith and fair dealing exists not only under federal common law, but also under Pennsylvania law" and that "'[i]n the absence of an express provision, the law  will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made and to refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract'").

-21-

interpretive gloss on the franchisor's contractual undertakings.   See GNC Franchising,

Inc. v. O'Brien, *supra*.

### D.  Punitive Damages

A&L's studious avoidance of some aspects of Alloy Bellows' claims

notwithstanding,[36] those claims include assertions that A&L (1) bribed Bradley to

"throw" the hydroformer contract to A&L rather than obtain proper competitive bids; and

(2) fraudulently conspired with that faithless employee, interfered with his employment

obligations, coopted his time and attention from his employment duties, and

misappropriated the benefit of his proprietary and/or other employment-related

information/expertise from Alloy Bellows for the design and construction of

hydroformers for (a) Flexible Metals and/or (b) Alloy Bellows' (*i.e.*, A&L and Bradley

may have *resold* to Alloy Bellows' its own work product).   Neither of these allegations,

with the evidence Alloy Bellows' has proffered in support, comprises garden-variety

contract and/or warranty issues; to the contrary, they raise serious material fact questions

regarding commercial misconduct which a reasonable jury could find to have been

intentional and outrageous/extreme.

See generally Chambers v. Montgomery, 192 A.2d 355 (1963) (recognizing the

standards governing punitive damages set forth in § 908 of the Restatement of Torts and

holding that punitive damages are those other than compensatory or nominal damages

"awarded against a person to punish him for his outrageous conduct"); id. (further

---

[36]  Cf. Plaintiff's Reply to Defendant's Opposition at 2-3 (characterizing breach of
warranty as "the heart of this case").

explaining that, "[i]n determining whether punitive damages should be awarded, the act itself together with all the circumstances including the motive of the wrongdoer and the relations between the parties should be considered"); Hutchison ex rel. Hutchison v. Luddy, 896 A.2d 1260, 1265 (Pa.Super. 2006) (noting that (1) punitive damages are proper only in cases where the defendant's actions are so outrageous as to demonstrate *willful*, wanton or reckless conduct; and (2) because punitive damages are intended to punish the tortfeasor for outrageous conduct and to deter him and others like him from similar conduct in the future, the act, or the failure to act, must be *intentional*, reckless or malicious); Delahanty v. First Pennsylvania Bank, N.A., 464 A.2d 1243, 1263-1264 (Pa.Super.1983) (noting that "a court may not award punitive damages merely because a tort has been committed", rather, "[a]dditional evidence must demonstrate wilful, malicious, wanton, reckless or oppressive conduct") (citations omitted); id. (further explaining that "[t]hough this rule seems to require the plaintiff to meet an additional burden, it is difficult to picture a fact pattern which would support a finding of intentional fraud without providing proof of 'outrageous conduct' to support an award of punitive damages"); id. (observing that "other jurisdictions, while agreeing with the above standard, have found that fraudulent misrepresentation by itself is sufficient to uphold an award of punitive damages because of the state of mind rendering it fraudulent") (citing with approval to cases including Aschoff v. Mobile Oil Corp., 261 N.W.2d 120 (S.D.1977) (exemplary damages upheld in connection with fraud in a business contract

-23-

where defendant had made false and fraudulent representations which induced the execution of a contract)).[37]

### E.  Misappropriation of Intellectual Property

The parties' briefs raise the question of an enforceable "work made for hire" provision in this case.  In general, the default rule is that, absent contractual provisions to the contrary, original works belong to the inventor rather than his employer.  But even if, as A&L asserts, Alloy Bellows' Employee Handbook provisions regarding work product do not constitute contract terms,[38] it appears to this Court that there is a triable question on this matter.  In general, the Court concurs with Alloy Bellows that the maintainability of this claim does not turn simply on a "work made for hire" analysis or a contractual designation of ownership.

To the contrary, Alloy Bellows alleges that Bradley, necessarily using proprietary and/or other information and/or expertise gained in the course of his employment, and *during* the course of that employment, secretly designed/manufactured hydroformers for its competitor and Alloy Bellows itself, in fraudulent conspiracy with and for the benefit of A&L.  Bradley's general duty of loyalty to Alloy Bellows is independent of the "work

---

[37] See also Dean Wittier Reynolds v. Genteel, 499 A.2d 637, 643 (Pa. Super. 1985) (noting that reckless indifference to rights of others and conscious action in deliberate disregard may justify award of punitive damages).

[38] It is unclear to this Court from the current pleadings whether this is a Federal question governed by the work made for hire statute or whether Ohio law controls with regard to the interpretation of the employee-signed Handbook as contractual.  For reasons discussed above, however, resolution of that question is unnecessary to the Court's conclusion that the claim should proceed.

made for hire" doctrine.  Where (a) A&L hired Bradley to act in contravention

of/procured his breach of that duty, and (b) Bradley utilized/incorporated

proprietary/confidential and/or other information/expertise gained in the course/scope of

his Alloy Bellows' employment in his design and manufacture of hydroformers for A&L

while under Alloy Bellows' full-time employ, the benefit of the intellectual

property/work generated by such improper actions may properly belong to Alloy

Bellows.  See generally Restatement (Second) of Agency, Section 395 (discussing

general duty, absent agreement to the contrary, not to use or communicate confidential

information in competition with or to the injury of the employer);[39] Section 393

(discussing employee's general duty not to compete); Restatement (Third) of Unfair

Competition Section 42, comment (e) (discussing allocation of ownership and noting that

information that is the product of an employee's assigned duties is owned by the

employer).[40]  A&L's protestations to the contrary notwithstanding, and regardless of the

patentability of Bradley's work product, under the facts as alleged by Defendant, A&L

clearly derived significant benefit from the sale of hydroformers which were the work

product of Alloy Bellows' full-time employee, including a hydroformer

designed/manufactured for, sold to, and serviced for a direct competitor.  Material fact

questions, some of which are informed by the Handbook and other indicia of the parties'

---

[39]  See also  Restatement (Third) of Agency, Section 8.05 (2006) (same).

[40]  Cf. Thomas & Betts Corp. v. Richards Mfg. Co., 2009 WL 2329916, *3 (3d Cir. July 30, 2009) (concluding that information that (1) employee would not have been aware of absent employment, (2) could be used to procure competitive advantage, and (3) employee had reason to know employer had interest in protecting, was confidential and supported claim for breach of duty under Section 395); id. at *4 (directing inquiry to relationship between employer and employee, parties' expectations, and intended use of information).

expectations/intent, exist regarding, *e.g.*, Bradley and Alloy Bellows' expectations regarding the scope/extent of his obligations, duties and job responsibilities; A&L's interference therewith; the information/knowledge/expertise employed in Bradley's work for A&L; and the times during which Bradley designed and manufactured hydroformers for A&L.[41]

## VI. <u>CONCLUSION</u>

For the foregoing reasons, it is respectfully recommended that A&L's Motion for Partial Summary Judgment and Alloy Bellows' Motion for Partial Summary Judgment be denied in their entirety.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrate Judges, the parties are allowed ten (10) days from the date of service to file objections to this Report and Recommendation.

---

[41] <u>See, *e.g.*</u> Plaintiff's Brief in Support of Motion for Partial Summary Judgment at 20 (asserting that Bradley's work on the Flexible Metal hydroformer "relied entirely on prior design work" he had done before his employment with Alloy Bellows).

Any party opposing the objections shall have ten (10) days from the date of service of

objections to respond thereto.  Failure to file timely objections may constitute a waiver of

any appellate rights.


/s/ Lisa Pupo Lenihan
LISA PUPO LENIHAN
United States Magistrate Judge


Dated: August 6, 2009